PHIL PHILLIPS FORD, INC., Petitioner,

v.

ST. PAUL FIRE AND MARINE INSUR-
ANCE COMPANY et al., Respondents.

No. B–2198.

Supreme Court of Texas.

April 7, 1971.

Groce, Hebdon, Fahey & Smith, Damon Ball, San Antonio, for petitioner.

Clemens, Knight, Weiss & Spencer, George H. Spencer, Moursund, Ball & Young, Frank J. Adelman, San Antonio, for respondents.

POPE, Justice.

Phil Phillips Ford, Inc. (Ford) sued Security Investment Corporation (SIC) and W. C. Pittman for conversion arising from the repossession of an automobile. Ford also filed suit against St. Paul Fire & Marine Insurance Co. (St. Paul), its theft loss insurer. SIC, Pittman, and St. Paul filed motions for summary judgment based on SIC's right as a lien holder to repossess the secured automobile. The trial court granted the defendants' motions for summary judgment and the court of civil appeals affirmed those judgments. 454

S.W.2d 465. We affirm the judgment of the court of civil appeals.

Two questions are presented by this appeal. The first is whether a security interest which was taken on an Oklahoma vehicle and which was valid and enforceable under the Oklahoma law, is also enforceable in Texas against an innocent purchaser for value without knowledge of the lien after the vehicle is brought to Texas and a Texas certificate of title is issued which does not disclose the lien. This question involves an interpretation of Section 9.103 of the Texas Business & Commerce Code, V.T.C.A.[1] The other question is whether, as to a third party, delivery of an automobile is effected when neither the seller nor the one to whom the seller leaves a power of attorney, has executed the transfer on the certificate of title. Art. 1436–1, Vernon's Ann. Penal Code.

Donna and Ruby Lay initially purchased the automobile in question, a 1967 Mercury, from a dealer in Oklahoma. As consideration for the purchase they executed a Uniform Commercial Code Security Agreement and Financial Statement. That document included a promissory note in the amount of $2,867.76 and provided that in the event of a default on any obligation under the instrument, the security interest holder could "without notice or demand for performance or legal process, enter any premises where the automobile may be found, take possession of it and custody of anything found in it, * * *." The dealer assigned its interest to SIC, which filed the security agreement with the county clerk of Tulsa County, Oklahoma, the Lays' home county. This filing perfected SIC's security interest under Oklahoma law.

The Lays received their original Oklahoma automobile title certificate from the Oklahoma Tax Commission. They later transferred this document to James P. Dignan by signing the reverse side of the certificate of title. Using the title certificate

1. Unless otherwise noted, all statutory references in this opinion are to Vernon's Ann. Business & Commerce Code.

transferred by the Lays, Dignan obtained on February 12, 1968, an original Oklahoma certificate of title in his own name. This certificate did not indicate any lien interest in the automobile. However, under Oklahoma law, notation on the certificate of title of a lien has no bearing on the perfection of the lien. Without the knowledge or consent of the Lays or SIC, Dignan took the automobile to Texas where he applied for and received a Texas certificate of title. This Texas certificate did not show SIC's lien, but it did show a small first lien interest in favor of the Hondo National Bank. The vehicle had been registered in Texas and had Texas license plates.

Shortly thereafter, Dignan sold the automobile to Ford in Devine, Medina County, Texas. At the time of this transfer, the original Texas certificate of title to the automobile was in the possession of the Hondo National Bank, the designated first lien holder. In conjunction with the transfer, Dignan executed a power of attorney designating L. L. Phillips, an officer of Phil Phillips Ford, Inc., as his attorney-in-fact for the purpose of transferring the certificate of title and registration to the automobile. Ford paid off the Hondo National Bank lien in the amount of $253.50 and acquired Dignan's unsigned original certificate of title from the bank.

Ford placed the automobile on its lot for resale where it remained until the night of April 30, 1968. At that time W. C. Pittman, acting at the direction of SIC, repossessed the vehicle and delivered it to SIC. Subsequently SIC returned the automobile to the Lays in Oklahoma upon their fulfilling the obligations under the original promissory note.

Ford filed suit against SIC and Pittman alleging damages arising from a conversion. It says that it bought the car from Dignan for value and without knowledge of the Oklahoma security interest and before it was perfected. Sec. 9.301. It says that it purchased the car on the basis of a Texas certificate of title which did not evidence the Oklahoma security interest and that the Texas Certificate of Title Act, which Section 9.103(d) makes applicable to this case, protects it from that lien. SIC and the other defendants moved for summary judgment stating that SIC was entitled to repossess the automobile as a matter of right under the terms of the Oklahoma security interest contract. They argue that SIC perfected its security interest under the Oklahoma law and that the security interest, by force of Section 9.103(c), though unrecorded on the Texas certificate of title, would remain perfected in Texas for four months after the car was brought to Texas, within which time the sale to Ford occurred. The relevant portions of the statute are:

§ 9.103. *Accounts, Contract Rights, General Intangibles and Equipment Relating to Another Jurisdiction; and Incoming Goods Already Subject to a Security Interest*

(a) * * *

(b) * * *

(c) * * *. If the security interest was already perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, the security interest continues perfected in this state for four months and also thereafter if within the four month period it is perfected in this state. The security interest may also be perfected in this state after the expiration of the four month period; in such case perfection dates from the time of perfection in this state. If the security interest was not perfected under the law of the jurisdiction where the property was when the security interest attached and before being brought into this state, it may be perfected in this state; in such case perfection dates from the time of perfection in this state.

(d) Notwithstanding Subsections (b) and (c), if personal property is covered by certificate of title issued under a statute of this state or any other jurisdiction which requires indication on a certificate of title of any security interest in the property as a condition of perfection, then the perfection is governed by the law of the jurisdiction which issued the certificate.

(e) * * *

The parties agreed that SIC's security interest in the automobile was perfected under Oklahoma law at the time the vehicle entered Texas and that the transactions between Ford and Dignan occurred within four months after the car was brought into Texas. If Section 9.103(c) applies, the Oklahoma law controls, and the fact that the security interest was not evidenced by the certificate of title acquired by Ford does not defeat SIC's security interest. The courts below have so held. The same conclusion was reached by the Superior Court of New Jersey in First National Bank of Bay Shore v. Stamper, 93 N.J. Super. 150, 225 A.2d 162 (1966). In Churchill Motors, Inc. v. A. C. Lohman, Inc., 16 A.D.2d 560, 229 N.Y.S.2d 570 (1962), the Appellate Division of the New York Supreme Court also indicated its approval of this reasoning in construing the same provision of the Pennsylvania Commercial Code.

A contrary conclusion was reached by the first court to construe Section 9.103(d). General Motors Acceptance Corp. v. Manheim Motor Auction, 25 Pa.D. & C.R.2d 179, 1 U.C.C.Rept.Serv. 388 (C. P. Lancaster Co. 1961). The Pennsylvania court held that under the Pennsylvania equivalent of Section 9.103(d), a lien on an automobile purchased in New York could not be enforced against a purchaser of the vehicle in Pennsylvania. Although New York does not utilize a certificate of title, the lien in question had been perfected in that state by filing a security agreement. Also, the resale in Pennsylvania had occurred within four months of the date on which the vehicle entered the state. However, prior to the resale, a Pennsylvania certificate of title had been issued. This certificate contained no notation of the lien as required for perfection under Pennsylvania law. See also, In re Edwards, 6 U.C.C.Rept.Serv. 1124 (E.D.Mich., Bankruptcy No. 69-460-B, July 15, 1969).

The courts in *Stamper* and *Churchill Motors, Inc.* rejected the reading given the statute by the Pennsylvania court. Instead they relied, as did the court of civil appeals in the present case, on language contained in the 1956 Recommendations of the Editorial Board for the Uniform Commercial Code declaring that subsection (d) was "new to avoid the possible necessity of duplicating perfection in the case of vehicles subject to a certificate of title law requiring compliance therewith to perfect security interests." Willier and Hart, Bender's Uniform Commercial Code Service-Reporter-Digest 1-645, 2-928 (1967). These courts concluded, on the basis of this comment, that subsection (d) did not apply in the case of an automobile arriving from a jurisdiction which did not require a notation of a lien on a certificate of title as a condition of perfection. This comment was not included in the Uniform Commercial Code Comment which accompanied the code at the time it was adopted by the Texas Legislature. The comments following the Texas provisions merely note that "[w]here property is covered by a certificate of title, the governing rule is stated in subsection [(d)] of this section." Sec. 9.103, Comment. We also note that the Review Committee for Article 9 of the Uniform Commercial Code "believes that more protection should be given to the local 'clean' certificate of title than was accorded in First National Bank of Bay Shore v. Stamper, 93 N.J.Super. 150, 225 A.2d 162 (1966)." Review Committee for Article 9 of the Uniform Commercial Code, Preliminary Draft No. 2, Comment G-15 (February 1, 1970).

Subsection (d) has been criticized for being something less than perfect example of clear draftsmanship. Willier and Hart, su-

pra, p. 2–928. However, its language plainly states without exception, that if the property is, at the time of a transaction, covered by a certificate of title issued under a statute which requires notation on the title to perfect security interest, perfection will be determined under the law of the state which issued the certificate. Rudd, Article 9 of the Uniform Commercial Code—Its Structure and Applicability, 44 Texas L.Rev. 683, 695 (1966). We find nothing in the language of this provision to indicate that it does not apply to vehicles arriving from states which do not require notation on a certificate of title as a condition for perfecting a security interest on the property.

This court in Bank of Atlanta v. Fretz, 148 Tex. 551, 226 S.W.2d 843 (1950), on facts substantially identical to those in the present case, held that a lien on an automobile validly acquired and recorded in another state was enforceable in this state against an innocent purchaser for value without notice, even though the purchaser relied on a Texas title showing no outstanding liens. Since that decision Texas has adopted the Uniform Commercial Code. The provisions of the code have abrogated our decision in *Bank of Atlanta*, which protected the foreign lien holder for an indefinite period of time.

■ We hold that when an automobile is covered by a certificate of title issued by this state, whether or not a lien on the vehicle is perfected and enforceable against an innocent purchaser, is to be determined by Texas law. Sec. 9.103(d). Under the law of this state a lien may not be enforced against an innocent purchaser unless it is noted on the Texas certificate of title. Art. 1436–1, sec. 44, Vernon's Ann.Penal Code.

■ Based upon what we have said to this point, the judgment of the court of civil appeals should be reversed and the cause remanded. However, this is a summary judgment proceeding. In such a case, if it affirmatively appears from the pleadings, admissions, depositions and affidavits that there are no issues as to any material facts upon which the outcome of the litigation depends, then summary judgment remains the proper remedy, even if it is to be granted upon a ground different from that specified in the motion for judgment. In re Price's Estate, 375 S.W.2d 900 (Tex.1964).

■ As noted earlier, when Dignan transferred possession of the Mercury to Ford, he signed a power of attorney appointing L. L. Phillips as his attorney-in-fact for the purpose of transfering the certificate of title and registration to the automobile. Dignan failed to sign the reverse side of the certificate of title, because the original certificate was held by the Hondo National Bank. Section 33 of Article 1436–1, Vernon's Ann.Penal Code provides:

> No motor vehicle may be disposed of at subsequent sale unless the owner designated in the certificate of title shall transfer the certificate of title on form to be prescribed by the Department before a Notary Public, which form shall include, among other matters as the Department may determine, an affidavit to the effect that the signer is the owner of the motor vehicle, and that there are no liens against such motor vehicle, except such as are shown on the certificate of title and *no title to any motor vehicle shall pass or vest until such transfer be so executed.* (Emphasis added.)

In applying this provision to the present case we must keep in mind that we are primarily concerned with the rights between Ford and SIC, and not with the rights between Ford and Dignan. A sale of an automobile not in compliance with the Certificate of Title Act has been held to be valid between the parties. Rush v. Smitherman, 294 S.W.2d 873 (Tex.Civ.App.1956, writ ref.). Here, however, we are dealing with the rights of third parties.

It is apparent from the record that Dignan failed to comply with the statute. He did not sign his Texas certificate of title

at the time it was issued, and he did not sign the reverse side of the certificate at the time of his sale to Ford. His signature on the reverse side would have required his affidavit that there were no liens on the vehicle other than those indicated. At the time the vehicle was repossessed, Dignan had not executed either the front or back side of his certificate of title.[2] Dignan gave Phillips his power of attorney and certainly Phillips had the right to take all necessary steps to comply with the statute and transfer the title certificate from Dignan to Ford or another. See, Freeburg v. Securities Investment Co., 331 S.W.2d 825 (Tex.Civ.App.1960, writ ref.). The certificate of title is in this record, and it shows that Phillips did not exercise his power and took none of the steps necessary to effect a transfer.

As to SIC, Dignan's sale to Ford was void. Art. 1436–1, sec. 53, Vernon's Ann. Penal Code; Ballard v. Associates Investment Co., 368 S.W.2d 232 (Tex.Civ.App. 1963, writ ref. n. r. e.). Ford at no time acquired title to the automobile, and title was still in Dignan at the time of the repossession. The Certificate of Title Act has not been superseded in this respect by Section 2.401 of the Business and Commerce Code. 2 Anderson, Uniform Commercial Code § 2–401:9 (2d ed. 1971).

Under Section 9.301 of the Business and Commerce Code, SIC's lien would be subordinate to Ford's interest if Ford were a buyer who had given value and received delivery of the secured property. Where a sale is made void by the Certificate of Title Act, there can be no delivery within the meaning of Section 9.301. As a consequence, SIC's interest, even though unperfected, was not subordinated to Ford's interest. SIC, by its repossession of the vehicle, was acting as lien holder against the automobile still owned by Dignan. The repossession was not a conversion of Ford's property.

Nothing has been said to this point about Ford's cause of action against St.

---

2. The following appears on the face of a Texas title certificate:
This title must be signed in ink upon receipt

_____

Signature of owner or agent

The applicant has stated under oath that he is the owner of the above described motor vehicle, subject to the hereinafter described lien and encumbrances and no others, and it appears upon the official records of the Department that at the date of the issuance of this certificate, said motor vehicle is subject to the liens hereinbefore enumerated.

The following appears on the reverse of a Texas title certificate:

—WHEN VEHICLE SOLD—

Title holder must assign and furnish this title, current license receipt and sales tax affidavit to purchaser who must file application with county tax collector within 10 days to avoid $5.00 penalty.

TITLE ASSIGNMENT        The ownership of this vehicle is hereby assigned to:

_____

Name of purchaser        Address        City & State

I (WE) hereby warrant the title to this vehicle to be free of all liens, except as recorded on the face of this Certificate and I (we) am (are) the legal owner(s) of the vehicle.

Notary        Signature_____ Seller
Seal          By_____

Subscribed and sworn to before me this _____ day of _____ 19___.

_____ Notary Public, _____ County, Texas

Paul, its theft loss insurer. Since we have concluded that SIC and its agent had a legal right to repossess the vehicle, it follows that the taking in this case did not constitute theft. Hudiberg Chevrolet, Inc. v. Globe Indemnity Co., 394 S.W.2d 792 (Tex. 1965).

The judgments of the courts below are affirmed.