NUMBER 13-02-210-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG




THE FIRST NATIONAL BANK
OF EL CAMPO, TEXAS,                                             Appellant,

v.

MICHAEL W. BUSS, TIFFANY RIHA,
ANTHONY OTT AND FALTISEK PAVING, INC.,                    Appellees.




On appeal from the 329th District Court
of Wharton County, Texas.




O P I N I O N
Before Justices Hinojosa, Castillo, and Chavez




Opinion by Justice Castillo

         Appellant First National Bank of El Campo, Texas ("FNB") appeals a summary
judgment in favor of appellees Michael Buss, Tiffany Riha, Anthony Ott, and Faltisek
Paving, Inc. (collectively, the "Buyers"). By a single issue, FNB asserts that an
automobile dealer's sale of inventory vehicles to the Buyers did not cut off its
perfected lien on the inventory. We affirm. 
I. BACKGROUND
         Greg Dota, d/b/a Greg's Auto Sales ("Dota"), is a used car dealer. On
December 31, 1999, FNB renewed an existing floor-plan loan agreement with Dota to
finance his inventory. Dota signed a "Security Agreement and Financing Statement"
that gave FNB a first lien on all current and subsequently acquired inventory he held
on his used car lot. Under this floor-plan loan agreement, FNB retained possession of
the original certificates of title for Dota's inventory of used vehicles. For each vehicle 
Dota sold, Dota was to apply the sales proceeds to the loan and arrange for the release
of the original title from FNB. 
         Under section 501.111 of the Texas Transportation Code, a person perfects a
security interest in a motor vehicle held as inventory by a person in the business of
selling motor vehicles only by complying with chapter 9 of the Texas Business and
Commerce Code. See Tex. Transp. Code Ann. § 501.111(b) (Vernon 1999). FNB
perfected its security interest in Dota's inventory by filing a UCC-1 with the Texas
Secretary of State. FNB retained possession of the original certificates of title. 
          In a series of separate transactions, the Buyers each bought vehicles from Dota. 
They paid for the vehicles and took possession. Dota deposited the funds he received
from the Buyers into his account at FNB. Dota did not give the Buyers certificates of
title, which were held by FNB. The Buyers completed title applications, which they left 
with Dota. Dota was to complete the application process and obtain issuance of new
certificates of title in the Buyers' names. 
         Meanwhile, Dota defaulted on his promissory note to FNB. FNB made demand
on both Dota and the Buyers to return the vehicles. Dota filed bankruptcy. The
Buyers filed suit against FNB, seeking: (1) a declaratory judgment that their purchases
cut off FNB's security interest in the inventory; and (2) damages caused by FNB's
refusal to release the certificates of title. FNB counterclaimed for a declaratory
judgment that its lien was valid and superior to the Buyers' claims of ownership. 
         The Buyers did not dispute that FNB perfected its lien in Dota's inventory. FNB
filed a motion for summary judgment, asking the trial court to rule on the validity of
its lien. FNB contended that the Texas Certificate of Title Act (the "Act") governed
the dispute and the parties' rights. See Tex. Transp. Code Ann. § 501.001 - 501.138
(Vernon 1999 & Supp. 2004). On the other hand, the Buyers countered that the
Texas Business and Commerce Code (the "Code") applied to the transactions. See,
e.g., Tex. Bus. & Com. Code Ann. § 1.201(9) (Vernon Supp. 2004) (defining buyer in
ordinary course), § 2.401 (Vernon 1994) (effect of passing of title), § 2.403 (Vernon
1994) (power to transfer), § 9.315(a) (Vernon 2002) (secured party's rights on
disposition of collateral; formerly § 9.306); § 9.320(a) (Vernon 2002) (buyers of
goods; formerly § 9.307).


 The trial court denied FNB's motion for summary
judgment. After nonsuiting their claim for damages, the Buyers filed their own
summary-judgment motion. The trial court granted it. This appeal ensued. 
II. SUMMARY-JUDGMENT ANALYSIS
A. Summary-Judgment Standards of Review
          On appeal, the standard of review for the grant of a motion for
summary judgment is determined by whether the motion was brought on no-evidence or traditional grounds. Tex. R. Civ. P. 166a(i), (c); Ortega v. City Nat'l
Bank, 97 S.W.3d 765, 771 (Tex. App.–Corpus Christi 2003, no pet.) (op. on
reh'g).  The difference in relative burdens between the parties in the two types of
summary-judgment motions is significant. Id. Determination of the nature of the
motion for summary judgment under analysis is critical. Id. Here, both parties brought
traditional motions for summary judgment. See Tex. R. Civ. P.166a(c). 
         The function of summary judgment is to eliminate patently unmeritorious
claims and defenses, not to deprive litigants of the right to a jury trial. Alaniz v.
Hoyt, 105 S.W.3d 330, 344 (Tex. App.–Corpus Christi 2003, no pet.). In both
traditional and no-evidence summary-judgment motions, we review the evidence "in
the light most favorable to the nonmovant, disregarding all contrary evidence
and inferences." See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,
988 S.W.2d 746, 748 (Tex. 1999); Branton v. Wood, 100 S.W.3d 645, 646 (Tex.
App.–Corpus Christi 2003, no pet.). The movant bears the burden of showing both
no genuine issue of material fact and entitlement to judgment as a matter of law.
Hoyt, 105 S.W.3d at 345. 
         When a summary-judgment order does not specify the grounds on which it is
based, we affirm the trial court's ruling if any of the theories advanced in the motion
are meritorious. State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex.
1993). Here, however, the trial court specified its grounds:
Upon consideration of the motion, the response, the summary
judgment evidence and the argument of counsel, the Court found that
each Plaintiff purchased a vehicle from Greg Dota d/b/a Greg's Auto
Sales ("Dota"), and that each Plaintiff was a buyer in [the] ordinary
course of business in connection with his/her/its purchase of such
vehicle . . . .
 
The Court was of the opinion that Plaintiffs' purchases of vehicles
from Greg Dota d/b/a Greg's Auto Sales cut off the Bank's inventory
security interest in such vehicles, and was therefore of the opinion that
the motion should be granted.
 
It is therefore ORDERED, ADJUDGED and DECREED that the
Motion for Summary Judgment of Plaintiffs/Counterdefendants Michael
W. Buss, Tiffany Riha, Anthony Ott and Faltisek Paving, Inc. is granted. 
 
It is further ORDERED, ADJUDGED, and DECREED that Plaintiffs'
purchases of vehicles from Greg Dota d/b/a Greg's Auto Sales cut off the
Bank's inventory security interest in such vehicles, and each Plaintiff
owns each such vehicle free and clear of any claim of the Bank.

Accordingly, we limit our review to these grounds. See id.; see also Pena v. State
Farm Lloyds, 980 S.W.2d 949, 953 (Tex. App.–Corpus Christi 1998, no pet.). 
         The non-movant has the burden to respond to a traditional summary-judgment
motion if the movant conclusively: (1) establishes each element of its cause of action
or defense; or (2) negates at least one element of the non-movant's cause of action
or defense. Hoyt, 105 S.W.3d at 345. When: (1) both sides move for summary
judgment; and (2) the trial court grants one motion and denies the other, we review
both parties' summary-judgment evidence and determine all questions presented. FM
Props. Operating Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000); Frost Nat'l
Bank v. L & F Distribs., 122 S.W.3d 922, 929 (Tex. App.–Corpus Christi 2003, pet.
filed). Since each party is a movant, the burden is the same for both: to establish
entitlement to summary judgment by conclusively proving all the elements of the
cause of action or defense as a matter of law. Buccaneer's Cove, Inc. v. Mainland
Bank, 831 S.W.2d 582, 583-84 (Tex. App.–Corpus Christi 1992, no writ). Neither
may prevail because of the failure of the other to discharge its burden. Id. at 584. 
When, as here, the only issue both movants presented to the trial court was a question
of law, we render the judgment the trial court should have rendered if we reverse. 
Tex. R. App. P. 43.2(c); Jones v. Strauss, 745 S.W.2d 898, 900 (Tex. 1988). Our
review is de novo. Ortega, 97 S.W.3d at 771. We turn to a discussion of the
statutory schemes at issue. 
                                                B. Discussion
1. The Statutory Schemes
a. The Texas Certificate of Title Act
         The Texas Legislature originally passed the Act in 1939. Its legislative history 
reflects that its purpose was to replace the transfer of vehicles by bill of sale with
transfer by certificate of title, to be administered by a central state-wide agency. 
Drake Ins. Co. v. King, 606 S.W.2d 812, 815 (Tex. 1980); see generally Tex. Transp.
Code Ann. § 501.001 - § 501.138 (Vernon 1999 & Supp. 2004). The Act specifically
provides that it shall be construed to lessen and prevent: (1) the theft of motor
vehicles; (2) the importation into this State of and traffic in stolen vehicles; and (3) the
sale of an encumbered vehicle without disclosure to the purchaser of a lien secured by
the vehicle. Tex. Transp. Code Ann. § 501.003 (Vernon 1999). The legislative intent
of the Act was not to prevent sales and transfers of interest in motor vehicles. See
Grammercy Ins. Co. v. Arcadia Fin., Ltd., 32 S.W.3d 402, 408 (Tex. App.–Houston
[14th Dist.] 2000, no pet.); Cash v. Lebowitz, 734 S.W.2d 396, 398 (Tex.
App.–Dallas 1987, writ ref'd n.r.e.). 
         A sale in violation of the Act is void. See Tex. Transp. Code Ann. § 501.073
(Vernon 1999). Title does not pass until the requirements of the Act are satisfied. 
See id. However, non-compliance with the Act does not override a clear showing of
valid and complete transfer of ownership. Grammercy Ins. Co., 32 S.W.3d at 408;
Najarian v. David Taylor Cadillac, 705 S.W.2d 809, 812 (Tex. App.–Houston [1st
Dist.] 1986, no writ). Despite the express language of section 501.073, the sale
of a vehicle without the transfer of a title certificate is valid "as between the
parties, when the purposes of the Certificate of Title Act are not defeated, although
the Act declares that the non-transfer of such certificates renders the sale void." 
Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co., 465 S.W.2d 933, 937 (Tex.
1971); see Grammercy Ins. Co., 32 S.W.3d at 408; see also Perry v. Breland,
16 S.W.3d 182, 187 (Tex. App.–Eastland 2000, pet. denied). 
         Of specific relevance to the dispute in this case, the Act provides that a motor
vehicle may not be the subject of a subsequent sale unless, at the time of sale, the
owner designated in the certificate of title transfers it. Tex. Transp. Code Ann.
§ 501.071 (Vernon 1999). However, a separate section of the Act expressly provides
that the Code preempts the Act: chapters one through nine of the business and
commerce code control over any conflicting provision of the Act. See Tex. Transp.
Code Ann. § 501.005 (Vernon 1999). We turn to a discussion of the Code. 

b. The Texas Business and Commerce Code
         The Code contains the Texas version of the Uniform Commercial Code. Under
the Code, "goods" are defined as "all things . . . which are movable at the time of
identification to the contract for sale . . . ." Tex. Bus. & Com. Code Ann. § 2.105(a)
(Vernon 1994). Motor vehicles are included in this broad definition. See
Hudson Buick, Pontiac, GMC Truck Co. v. Gooch, 7 S.W.3d 191, 197 (Tex.
App.–Tyler 1999, pet. denied) (citing Assocs. Disc. Corp. v. Rattan Chevrolet, Inc.,
462 S.W.2d 546, 549 (Tex. 1970)). The Code provides, unless otherwise explicitly
agreed, that title passes to the buyer at the time and place at which the seller
completes performance with reference to the physical delivery of the goods. Tex. Bus.
& Com. Code Ann. § 2.401(b) (Vernon 1994). Title passes despite any reservation of
a security interest. Id. Moreover, title passes even though a document of title is to
be delivered at a different time or place. Id. 
         Under the Code, a "buyer in ordinary course of business" is a person, who in
good faith and without knowledge that the sale violates the rights of another person
in the goods, buys in the ordinary course of business from a person in the business of
selling goods of that kind. See Tex. Bus. & Com. Code Ann. § 1.201(9) (Vernon
Supp. 2004). The Code protects a "buyer in ordinary course of business" even though
a security interest is perfected. Tex. Bus. & Com. Code § 9.320(a) (Vernon 2002). 
Its protections extend even to a "buyer in ordinary course of business" who knows of
the existence of a lien. Id. 
2. Application of the Statutory Schemes to the Parties' Dispute
         FNB contends that the Buyers did not comply with the requirements of the Act
when they did not obtain certificates of title contemporaneously with their purchases
of the vehicles. See Tex. Transp. Code Ann. § 501.071 (Vernon 1999). As a
consequence, FNB argues, the sales to the Buyers were void. See Tex. Transp. Code
Ann. § 501.073 (Vernon 1999). Therefore, FNB continues, the Buyers were not
buyers in the ordinary course of business, and the Buyers' purchases did not extinguish
its lien. Similarly, the Buyers also focus on the relationship between the Act and the
Code, not on Dota's status as owner or dealer. We limit our analysis accordingly.


 
The Buyers argue that the Code controls any conflict between the Act and the Code
with regard to the transfer of title and the effect on FNB's security interest. 

a. Conflicting Statutory Provisions
         The legislative history of the Act details the legislative mandate that the Code
preempts over the Act in the event of a conflict between the two statutory schemes: 
[T]he Texas legislature has decided which statutory scheme applies in the
event there is a conflict between the Code and the Act. Section
501.005 of the Act states: 'Chapters 1-9, Business and Commerce
Code, control over a conflicting provision of this chapter.' Tex. Transp.
Code Ann. § 501.005 (Vernon 1999). The legislative history behind the
passage of this provision of the Act is instructive. In April of 1971, the
supreme court issued the opinion of Phil Phillips Ford, Inc. v. St. Paul Fire
& Marine Ins. Co., 465 S.W.2d 933 (Tex. 1971). In that opinion, the
court had held the Act's provisions requiring transfer of the certificate of
title at the time of sale were not superseded by section 2.41 of the Code. 
Phil Phillips Ford, 465 S.W.2d at 938. At that time, the Act did not
provide that the Code controlled in the event of a conflict. Thereafter,
in May of 1971, the legislature amended the Act to include [the
predecessor to section 501.005] which stated that the Code controlled
if there was a conflict with the Act. This amendment of the Act
overruled the Phil Phillips Ford opinion and established that
section 2.401(b) of the Code controls over the Act's provision that
purports to void the sale of an automobile absent the transfer of the
certificate of title. See In re Bailey Pontiac, Inc., 139 B.R. 629, 633 n.3
(N.D. Tex. 1992).

Hudson Buick, 7 S.W.3d at 198 (footnotes omitted). In 1971, the Legislature also
repealed former section 45 of the Act, which had provided that "[e]xposure for sale
of any motor vehicle by the owner thereof with the knowledge or consent of any
mortgagee shall not affect the rights of any mortgagee as against all third parties." 
Nelms v. Gulf Coast State Bank, 516 S.W.2d 421, 423 (Tex. App.–Houston [1st
Dist.] 1974), aff'd, 525 S.W.2d 866 (Tex. 1975). In the emergency clause of the
1971 amendment to the Act, the Legislature declared that the 1971 amendments
were necessary "to remove doubt and . . . to make consistent the provisions
and terminology of the Certificate of Title Act with the Texas Uniform Commercial
Code." See Act of April 29, 1971, 62nd Leg., R.S., ch. 123, § 8, 1971 Tex. Gen.
Laws 895, 896. This legislative history clearly evinces the Legislature's determination
to resolve conflicts between the Act and the Code in favor of the Code. 
b. Avoiding the Preemptive Effect of the Code by Avoiding the Conflict
         FNB attempts to avoid the consequences of the preemptive provision of the Act
by arguing there is no conflict between the two statutes. Under FNB's analysis, the
sales to the Buyers were not completed in accordance with the Act and were therefore
void. In other words, FNB contends we should look first to the Act to determine the
effect of the transactions at issue. Since the transactions were "void" under the Act,
FNB asserts, the provisions of the Code simply do not come into play. 
          FNB's position finds support in opinions of the Dallas Court of Appeals, which 
has repeatedly held that the Act controls transactions involving the sale of motor
vehicles without a proper transfer of the certificate of title. See, e.g., Gallas v. Car
Biz, Inc., 914 S.W.2d 592, 594-95 (Tex. App.–Dallas 1995, writ denied); Pfluger v.
Colquitt, 620 S.W.2d 739 (Tex. Civ. App.–Dallas 1981, writ ref'd n.r.e.); Morey v.
Page, 802 S.W.2d 779, 783-84 (Tex. App.–Dallas 1990, no writ); Ballard v. Assocs.
Invest. Co., 368 S.W.2d 232, 234 (Tex. Civ. App.–Dallas 1963, writ ref'd n.r.e.). 
According to these cases, "[t]his interpretation gives meaning to both statutes and
obviates any necessity to resort to [the preemption provision of the act] to resolve any
apparent conflict." See Gallas, 914 S.W.2d at 595. 
         Other cases also find no conflict between the Act and the Code with regard to
third-party rights so as to trigger the preemption provision in the Act. That line of
authority holds that a purported transfer of an automobile that does not comply with
the Act does not affect a third party's rights. See Bank One Texas, N.A. v. Arcadia
Financial Ltd., 219 F.3d 494, 498 (5th Cir. 2000); see also United States v. 1977
Porsche Carrera, 946 F.2d 30, 34 (5th Cir. 1991). Under this analysis, a third party's
perfected security interest is not interrupted when a purported buyer attempts to
purchase an automobile without receiving title as required to complete a sale under the
Act. See Bank One Texas, N.A., 219 F.3d at 498. The sale may be valid as between
the buying and selling parties, but the purchaser only takes an equitable possessory
interest and a right to acquire such right, title, and interest as the seller possesses. 
See 1977 Porsche Carrera, 946 F.2d at 34. 
         Despite broad language regarding the rights of "third parties," these cases do
not address the situation presented by a priority dispute between a floor-plan financier
and individuals claiming to be buyers in the ordinary course of business. See Bank One
Texas, N.A., 29 F.3d at 498 (priority dispute between floor-plan financier and
purchase-money lender); see also 1977 Porsche Carrera, 946 F.2d at 34 (dispute
between state and attorney in forfeiture action where alleged drug dealer had "sold"
vehicle used to distribute contraband to attorney in partial satisfaction of fees). 
         We conclude that neither FNB's argument nor the approaches taken by the
Dallas court and the Fifth Circuit account for the obvious disparity between the Act
and the Code with regard to when title passes. The Legislature's mandate, in the
event of conflict, is that the provisions of the Code control. See Gallas, 914 S.W.2d
at 595-601 (Wright, J., dissenting); Pfluger, 620 S.W.2d at 744-48 (Stephens, J.,
concurring). 
         We do not distinguish between the protection the law affords innocent
purchasers of used vehicles from the protections afforded innocent purchasers of new
vehicles. See Tyler Car v. Empire Fire & Marine Ins. Co., 2 S.W.3d 482, 485-86 (Tex.
App.–Tyler 1999, pet. denied) (discussing State v. Southwind Auto Sales,
951 S.W.2d 849, 852 (Tex. App.–San Antonio 1997, no writ)). Tyler Car explained
that some of the obvious contradictions in this area of the law result from strict
application of the Act in cases involving crime, fraud, or the rights of third parties
where strict application of the Act "yielded the only equitable result." Tyler Car,
2 S.W.3d at 485; see Gallas, 914 S.W.2d at 593; see also Allstate Ins. Co. v. Dykes,
461 S.W.2d 519, 522 (Tex. Civ. App.–Tyler 1970, writ ref'd n.r.e.)). 
c. The Context of the Legislative Scheme
         Application of the Code in the event of conflict with the Act is supported by
analysis of the context of the two statutory schemes. There have been repeated
nation-wide difficulties in reconciling certificate-of-title statutes and the Uniform
Commercial Code. See generally Steven N. Leitess, Modernizing Certificate of Title
Laws: Is it Time for a Uniform Certificate of Title Law, 2002 ABI JNL. LEXIS 192 (Am.
Bankr. Inst. Dec. 2002); Larry T. Bates, Certificates of Title Under Revised Article
Nine, 53 Baylor L. Rev. 735 (2001). One of the declared purposes of the Code is to
simplify, clarify, and modernize the law governing commercial transactions. Tex. Bus.
& Com. Code Ann. § 1.103(a)(1) (Vernon Supp. 2004). It also is to be construed and
applied to make uniform the law among the various jurisdictions. See Tex. Bus. &
Com. Code Ann. § 1.103(a)(3) (Vernon Supp. 2004). 
d. Consistency
         Last but not least, application of the Code to protect a buyer in the ordinary
course of business comports with the general approach taken in earlier cases issued
by this Court. See, e.g., Bures v. First Nat'l Bank, 806 S.W.2d 935, 939-40 (Tex.
App.–Corpus Christi 1991, no writ) (floor-plan financier's security interest in trailer cut
off by buyer in ordinary course of business); Apeco Corp. v. Bishop Mobile Homes,
Inc., 506 S.W.2d 711, 716 (Tex. App.–Corpus Christi 1974, writ ref'd n.r.e.)
(manufacturer's security interest in mobile home cut off by buyer in ordinary course
of business). Although Apeco referenced the doctrine that a subsequent sale is void
unless the Act is complied with, this Court in that case found no conflict between the
Act and the Code given that the case involved a first, and not subsequent, sale. See
id. Thus, Apeco held that the Act was inapplicable. Id. 
                                              III. CONCLUSION
         We conclude that application of the Code in the circumstances of this case
facilitates the creation of a uniform system of laws that will meet the reasonable
expectations of those who engage in commercial transactions, not just in Texas, but
across the country. Uniform laws benefit lenders and borrowers alike. Accordingly,
we find the Act and the Code in conflict with regard to when legal title passes under
the circumstances presented by this case.


 We hold that the provisions of the Code
control to establish the relative rights of a floor-plan financier and a purchaser of a
used vehicle from a dealer. See Tex. Transp. Code Ann. § 501.005 (Vernon 1999);
cf. Hudson Buick, 7 S.W.3d at 198 (detailing legislative history behind conflicting
provisions in determining that Code and not Act controlled ownership of vehicle in
personal-injury liability action); Tyler Car, 2 S.W.3d at 485-86 (refusing to apply Act
to invalidate sale in insurance coverage dispute); Bailey Pontiac, 139 B.R. at 633 n.3
(rejecting argument that Act controlled passage of title). 
         We conclude that the Texas Business and Commerce Code, not the Texas
Certificate of Title Act, determines the legal effect of the transactions at issue. We
hold that the Buyers were buyers in the ordinary course of business. Their purchases
cut off FNB's security interest in the vehicles. 
         Accordingly, we overrule FNB's sole issue. We affirm the trial court's judgment
in favor of the Buyers. 

                                                               ERRLINDA CASTILLO
                                                                Justice


Chavez, J., not participating.


Opinion delivered and filed
this 27th day of August, 2004.