**TEXAS STATE BANK, Appellant,**

v.

**FOREMOST INSURANCE COMPANY, Appellee.**

**No. 667.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 29, 1972.

Rehearing Denied March 16, 1972.

Sorrell, Anderson, Sorrell & Atwill, William R. Anderson, Jr., Corpus Christi, for appellant.

Kleberg, Mobley, Lockett & Weil, Henry Nuss, III, Corpus Christi, for appellee.

## OPINION

NYE, Chief Justice.

Texas State Bank filed suit to obtain possession of a mobile home from defendant Foremost Insurance Company or in the alternative to recover the wholesale cost of the mobile home. The trial court entered a take nothing judgment in favor of Foremost and the bank appealed. The question to be decided is the validity of an asserted lien on a mobile home.

The bank loaned Lloyd J. Goodbar $10,000.00, receiving as security two specifically described mobile homes. Goodbar executed a promissory note and security agreement which provided additionally that "All other new and used mobile homes now owned or hereafter purchased" were to be included. Goodbar executed a financing statement which was filed with the Secretary of State. At the time the loan was made, Goodbar also delivered to the bank a manufacturer's certificate of origin on a 1970 Prudential mobile home not specifically listed on the security agreement. The manufacturer's certificate was from Design Homes Corporation, a manufacturer, to Foremost Insurance Company, the first owner. The certificate was not indorsed by any representative of Foremost. It reflected that Foremost was the original and only assignee. Goodbar represented to the bank, however, that he had been authorized to pledge the manufacturer's certificate in question to the bank as security for the loan. Goodbar then left the State of Texas without paying the bank. The bank was unable to locate most of the other collateral it had received from Goodbar, whereupon it filed this suit against Foremost. Foremost had no knowledge of the transaction between the bank and Goodbar. There was an unpaid balance of $5708.67 owed by Goodbar to the bank at the time of trial. All of the facts were agreed to by stipulation and no other evidence was introduced other than the stipulation of the parties.

Foremost purchased the mobile home from the manufacturer. The unit was

moved onto a lot operated by Goodbar. Goodbar was in the business of selling mobile homes. Goodbar and Foremost entered into a verbal agreement whereby Goodbar would try to sell the mobile home for Foremost and Goodbar could keep anything he was able to obtain above a certain price. Foremost had purchased two mobile homes. Shortly thereafter, Goodbar represented to Foremost that he had sold one of the homes and needed the manufacturer's certificate to arrange the financing. Foremost indorsed one of the manufacturer's certificates and delivered it to Goodbar with the understanding that Goodbar would obtain a cashier's check in the amount of the invoice price and return it to Foremost. At the same time Goodbar was also delivered the manufacturer's certificate to the other mobile home (the one in question). However, the second manufacturer's certificate was not assigned or indorsed by Foremost.

Basically, the bank contends that it has a valid security interest in the second mobile home because it has possession of the original manufacturer's certificate and possession of the mobile home. It argues that Foremost should not have permitted the manufacturer's certificate of origin to come into Goodbar's hands. The trial court found that the security interest claimed by the bank was invalid and unenforceable because: (1) Goodbar did not have an ownership interest in the mobile home to assign to the bank; (2) the bank did not have a security agreement describing the mobile home; and (3) the bank failed to note its name, address and date on the manufacturer's certificate of origin. The trial court also held that Goodbar was never an actual apparent or ostensible agent of Foremost and did not have apparent authority to grant to the bank a security interest in the mobile home; that the bank failed to make that inquiry which ordinary care would require under similar circumstances; and further that if the bank had made such inquiry it would have discovered that Goodbar had no authority to grant a security interest in the mobile home in question. We affirm the judgment of the trial court.

■■■■ . In order to create a valid security interest in collateral such as a mobile home, Section 9.204, Sub-section (a) of the Texas Business and Commerce Code requires: (1) That there be an agreement that a security interest in the collateral attach (see Section 1.201(3)); (2) that value be given; and (3) that the debtor have rights in the collateral. The manufacturer's certificate of origin was at all times in the name of Foremost. The certificate had never been indorsed. It was not in "open" or "negotiable" status. Neither the bank nor Goodbar could have negotiated a "first sale" with a prospective purchaser without an assignment, an indorsement or an authorization by Foremost. Foremost was and is the owner of the mobile home. The manufacturer's certificate indicates that the ownership was transferred from the manufacturer to Foremost. Goodbar never obtained any rights in the mobile home from Foremost to assign to the bank. We hold that no one can give a valid security interest in such property unless he has rights in the collateral. Williams v. King, 206 S.W. 106 (Tex.Civ.App.—Austin 1917). See Continental Credit Corporation v. Norman, 303 S.W.2d 449 (Tex.Civ.App.—San Antonio 1957, n. r. e.); Motor Investment Co. v. Knox City, 141 Tex. 530, 174 S.W.2d 482 (Tex.Sup.1943); Sec. 9.204, Texas Business and Commerce Code.

Where the collateral is a mobile home, Section 41 of Art. 1436–1 of the Texas Penal Code as it existed at the time of the transaction, required that the secured party note its name, address and the date on the manufacturer's certificate of origin.[1] Sec. 41 of Art. 1436–1, Texas Penal Code, provided that "No lien shall be valid . . ., or be enforceable against such motor vehicle (mobile home) unless there is noted on the importer's or manufacturer's certificate

---

1. Sec. 41 of Art. 1436–1 was amended effective May 10, 1971. This amendment became law subsequent to the instant transaction.

the date, name, and address of the mortgagees . . . ."

It is undisputed that the bank failed to comply with Art. 41 of the Certificate of Title Act. Appellant urges, however, that there is an exception to this strict requirement under Section 41 above referred to. This is where there has been an assignment and delivery of a clear and unencumbered certificate of title to a bank or finance company who retains possession of the "open title" as security for the purchase money. Citing Southwestern Investment Co. v. American National Bank of Amarillo, 374 S.W.2d 318 (Tex.Civ.App.—Amarillo 1963, writ ref'd n. r. e.); First State Bank of Corpus Christi v. Austin Motors, 315 S.W.2d 390 (Tex.Civ.App.—San Antonio 1958, writ ref'd); Associates Investment Co. v. Michigan National Bank, 397 S.W.2d 552 (Tex. Civ.App.—Ft. Worth 1965, n. r. e.). In each of the cited cases the certificate of ownership had been signed in blank by the owner on the certificate; or the security or floor plan agreement with the lending institute had described the specific motor vehicle or house trailer; or as in other cases the dealer had the right or authority to pledge or assign the vehicle as collateral for a loan. Even the security agreement relied upon by appellant did not specifically describe the mobile home. It limited the security to mobile homes "now owned or hereafter purchased." Goodbar never owned or purchased the mobile home in question. Foremost was the owner and did not indorse or assign in blank the certificate. Goodbar did not have any written specific authority from Foremost to assign the mobile home as security. All of appellant's cited cases are distinguishable. Appellant's first set of points are overruled.

Appellant in a second group of points complains of the trial court's judgment contending that Foremost voluntarily delivered to Goodbar the manufacturer's certificate, thereby clothing Goodbar with such apparent authority as to make him its agent in connection with the security transaction

with the bank. These points of error are also without merit.

 Title to the mobile home is determined by the certificate of title or the manufacturer's certificate. This title information makes it easy for a prospective purchaser or lending agency to determine who is the true owner. The purpose of the Act is to defeat schemes by persons without authority or ownership. We believe that the bank by diligent use of the information at hand could have determined the true ownership in the mobile home in question. Continental Credit Corporation v. Norman, supra. See Freeberg v. Securities Investment Co. of St. Louis, 331 S.W.2d 825 (Tex.Civ.App.—San Antonio 1960); Fick v. Mills, 347 S.W.2d 381 (Tex.Civ.App.—Waco 1961).

We have examined all of appellant's points of error and they are overruled.

Judgment of the trial court is affirmed.