Mark GALLAS, Appellant,

v.

CAR BIZ, INC., Appellee.

No. 05–94–01754–CV.

Court of Appeals of Texas,
Dallas.

Nov. 8, 1995.

John M. Weaver, Misko, Howie & Swee-
ney, Dallas, for appellant.

James K. Johnson, Dallas, for appellee.

Before LAGARDE, OVARD, and
WRIGHT, JJ.

## OPINION

LAGARDE, Justice.

Appellant Mark Gallas appeals from a judgment notwithstanding the verdict (JNOV) in favor of appellee Car Biz, Inc. involving disputed claims of ownership of an automobile. In two points of error, appellant contends that the trial court erred in: (1) granting appellee's motion for JNOV, and (2) denying appellant's motion for judgment. We overrule the points and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Randy Darden, vice-president of appellee, a licensed car dealership, testified that in June 1993, he met with Kevan Stamper, d/b/a Heart Attack Autos, and discussed selling

Stamper some motor vehicles. Before entering into any transactions with Stamper, appellee verified with the dealer relations division of the state highway department that Stamper was a licensed used car dealer in good standing.

On July 16, 1993, through a sealed bid on a sight draft, appellee purchased a used 1992 Ford Explorer from Gillman Companies. Gillman Companies deposited the draft on July 23, 1993.[1] On July 19, 1993, Darden negotiated the purchase price of the vehicle with Stamper, and Stamper gave appellee a three-day sight draft for the vehicle. Believing the draft to be good, Darden considered Stamper the owner of the vehicle and allowed him to take possession of the vehicle. Darden did not give Stamper the certificate of title; rather, he began the title process.

Appellant testified that, in the meantime, he saw Stamper's advertisement in the newspaper to sell a 1992 Ford Explorer. Appellant contacted Stamper and met Stamper in the parking lot of a filling station. On July 22, 1993, Stamper sold appellant the vehicle, after negotiating a purchase price of fourteen thousand dollars, which appellant paid. Stamper gave appellant possession of the vehicle, but not a certificate of title. Instead, appellant filled out an application for title and relied on Stamper's representation that title was "in transit or in transfer" and that all paper work would be sent to Austin where title would be transferred into appellant's name. Appellant admitted that he did not try to ascertain the owner named on the title by calling the proper agency or doing a title search. Appellant believed that title was in the name of Heart Attack Autos.

Before the title process was completed, Darden explained that the bank notified appellee that Stamper's draft was "no good" and, thus, title was never transferred. Appellee reported the vehicle stolen. While appellant was driving the vehicle, he was stopped by the police and arrested for driving a stolen vehicle. Because appellee had signed the reassignment provision on the reverse side of the certificate to Heart At-

tack Autos, Darden applied with the State for a new title. On October 26, 1993, the State issued an original certificate of title naming appellee as the owner.

Appellant sued appellee seeking a declaration that appellant was the owner of the vehicle and specific performance of title transfer. Appellant also pleaded conversion and estoppel. Appellee answered and counterclaimed seeking a declaration of ownership and specific performance of possession of the vehicle. Appellee also pleaded conversion and sought damages for the loss of the vehicle. The jury returned a verdict in appellant's favor finding: (1) Stamper purchased the vehicle from appellee; (2) appellee delivered the vehicle to Stamper under a purchase transaction; (3) appellee entrusted possession of the vehicle to Stamper; (4) Stamper was a merchant who dealt in the business of used automobiles; (5) appellant was a buyer in the ordinary course of business; and (6) Stamper was not appellee's agent in selling the vehicle to appellant. Appellee filed a motion for JNOV, which the trial court granted. The trial court's order declared that appellee was the owner of the vehicle and ordered appellant to deliver the vehicle to appellee.

## STANDARD OF REVIEW

■ A motion for JNOV should be granted when the evidence is conclusive, and one party is entitled to recover as a matter of law. *Phar–Mor, Inc. v. Chavira*, 853 S.W.2d 710, 713 (Tex.App.—Houston [1st Dist.] 1993, writ denied). For a trial court to disregard a jury's findings and grant a motion for JNOV on the evidence, it must determine whether the evidence established an issue as a matter of law, and the jury was not free to make contrary findings. *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex.App.—Houston [1st Dist.] 1992, writ denied). When the trial court does not specify its reasons for granting a JNOV, the appellant has the burden to discredit each ground in the appellee's motion. *Friedman v. Houston Sports Ass'n,*

---

1. Because the sight draft was not deposited until July 23, appellant disputes when appellee received the certificate of title. Appellant, however-

er, does not dispute that appellee was assigned and actually received the certificate.

731 S.W.2d 572, 573 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

## CERTIFICATE OF TITLE ACT

■ Appellee's motion for JNOV asserts that the evidence conclusively established that appellant purchased a vehicle from a third party, Stamper, who did not have, and could not pass, "good title" pursuant to the Certificate of Title Act (the Act). *See* TEX. REV.CIV.STAT.ANN. art. 6687–1, §§ 33,[2] 53[3] (Vernon 1977 & Supp.1995). In response, appellant argues that section 2.403(b) of the Texas Business and Commerce Code (the Code) controls the disposition of the case, and that appellee's entrustment of the vehicle to Stamper gave Stamper the power to transfer all rights in the vehicle to appellant. *See* TEX.BUS. & COM.CODE ANN. § 2.403(b) (Tex. UCC) (Vernon 1994).[4] Appellant argues that this provision prevails over the Act because section 65 of the Act expressly provides that in case of conflict between the Act and the Code, the Code provision controls.[5] *See* TEX. REV.CIV.STAT.ANN. art. 6687–1, § 65 (Vernon 1977).

■ This Court addressed similar arguments in *Morey v. Page*, 802 S.W.2d 779, 783–84 (Tex.App.—Dallas 1990, no writ), and *Pfluger v. Colquitt*, 620 S.W.2d 739, 741–42 (Tex.Civ.App.—Dallas 1981, writ ref'd n.r.e.). In both of those cases, after harmonizing the respective provisions, this Court held that the Act controls transactions involving the sale of motor vehicles without a proper transfer of the certificate. *Morey*, 802 S.W.2d at 784; *Pfluger*, 620 S.W.2d at 741–42. This Court based its decisions on the following reasoning:

As we interpret section 2.403(b) of the Code, the merchant's power "to transfer all rights of the entruster" is intended to give the merchant the same power to transfer which the owner of the goods can exercise himself.... The power of the owner of a motor vehicle to transfer the title is limited by the Certificate of Title Act, and specifically by section 33, which provides that no motor vehicle shall be disposed of at a subsequent sale and no title shall pass without a transfer of the certificate in the manner prescribed by the Act. Under this provision, if the owner has no power to dispose of the vehicle without a proper transfer of the certificate, then no merchant to whom the vehicle is entrusted has the power to dispose of it without a proper transfer of the certificate....

If the contrary interpretation were adopted, a dealer to whom an owner has entrusted his vehicle for some other purpose, such as repairs, would have the power to sell the vehicle and pass title to a purchaser without a proper transfer of the certificate, thus defeating the purpose of the Certificate of Title Act, which is to prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens.

him power to transfer all rights of the entruster to a buyer in the ordinary course of business.

TEX.BUS. & COM.CODE ANN. § 2.403(b) (Tex. UCC) (Vernon 1994).

**2.** Section 33 provides, in relevant part, that:
No motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title, at the time the motor vehicle is transferred, on a form prescribed by the Department.... No title to any motor vehicle shall pass or vest until the transfer is so executed. TEX.REV.CIV.STAT.ANN. art. 6687–1, § 33 (Vernon Supp.1995).

**3.** Section 53 provides that:
All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with.
*Id.* § 53 (Vernon 1977).

**4.** Section 2.403(b) of the Code provides that:
Any entrusting of possession of goods to a merchant who deals in goods of that kind gives

**5.** The dissent relies on sections 2.401 and 2.403(a) of the Code to establish that the Code prevails over the Act. *See id.* §§ 2.401, 2.403(a) (Vernon 1994). Appellant, however, failed to assert these provisions in a point of error and support them by argument and authorities in his brief. An appellate court may not reverse a judgment of a trial court for a reason not raised in a point of error. *Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993). Accordingly, these arguments are not properly before this Court, and the dissent is in error in its reliance on them.

*Pfluger,* 620 S.W.2d at 741–42. This interpretation gives meaning to both statutes and obviates any necessity to resort to section 65 of the Act to resolve any apparent conflict. *Id.* at 742. Because this case involves the sale of a motor vehicle without a proper transfer of the certificate of title, we hold that it is, likewise, governed by the Act.[6]

Section 51 of the Act, in relevant part, provides:

> It shall hereafter be unlawful for any person, either by himself or through any agent, to offer for sale or to sell ... any motor vehicle registered or licensed in this State without then and there having in his possession the proper receipt or certificate of title covering the motor vehicle so offered.

TEX.REV.CIV.STAT.ANN. art. 6687–1, § 51 (Vernon 1977). The failure to comply with this provision renders the sale void and passes no title. *Id.* § 53; *Boswell v. Connell,* 556 S.W.2d 624, 625–26 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.). In *Boswell,* a dealer, Boswell, sold and gave possession of a vehicle to Jenkins, another dealer, with Boswell retaining the certificate of title. Jenkins paid for the vehicle with a sight draft, which was later returned unpaid. *Boswell,* 556 S.W.2d at 625. Without possession of the certificate of title, Jenkins sold the vehicle to Connell, a nondealer, but could not give him the certificate of title. *Id.* Because Jenkins did not have, and therefore could not transfer, the certificate of title to Connell, the court held that the subsequent sale from Jenkins to Connell was void as to Boswell and no title passed. *Id.* at 625–26.

The facts of *Boswell* are nearly identical to the facts of this case. Like Boswell, appellee sold and gave possession of the vehicle to another dealer, Stamper, retaining the certificate of title. Stamper gave appellee a sight draft, which was "no good." Appellant, a nondealer, purchased the vehicle at a subsequent sale from Stamper who did not have, and therefore could not transfer, the certificate of title. Appellant made no attempt to distinguish *Boswell* in his brief or in his

response to appellee's motion for JNOV. We hold that the sale from Stamper to appellant was void as to appellee and did not pass title pursuant to the Act.

Relying on *In re Bailey Pontiac, Inc.,* 139 B.R. 629, 634 (Bankr.N.D.Tex.1992), appellant argues that the custom and practice among car dealers is to pass title at the time of the delivery of the vehicle. However, the court in *Bailey* confined that particular custom and practice to the auction industry. *See id.* at 634. Thus, *Bailey* is not applicable to these facts.

Finally, appellant argues that the legislature enacted section 2.403 of the Code to shift the loss to appellee based on equity principles. However, we have already concluded that the Act controls the disposition of this case. Further, appellant is not without a remedy because a sale *between the parties* is not rendered void by non-compliance with the Act. *Cash v. Lebowitz,* 734 S.W.2d 396, 398 (Tex.App.—Dallas 1987, writ ref'd n.r.e.); *Pfluger,* 620 S.W.2d at 742. Because appellant paid Stamper for the vehicle, any cause of action appellant may have is against Stamper. *See Drake Ins. Co. v. King,* 606 S.W.2d 812, 818 (Tex.1980). Accordingly, we conclude that the trial court properly granted appellee's motion for JNOV and properly denied appellant's motion for judgment. We overrule appellant's first and second points of error.

We affirm the trial court's judgment.

WRIGHT, J. dissenting.

WRIGHT, Justice, Dissenting.

I respectfully dissent. Gallas obtained favorable jury findings under the Texas Business and Commerce Code (the Code). The trial court granted Car Biz, Inc. judgment notwithstanding the verdict under the legal theory that the Certificate of Title Act (the Act) controlled. The majority affirms the trial court in giving controlling weight to the Act over the Code. The Act states the Code is controlling in instances where the Code and the Act conflict. The express language

---

**6.** Although appellant asks this Court to adopt the reasoning of the concurring opinion in *Pfluger,* we decline to do so.

of sections 2.401, 2.403(a), and 2.403(b) of the Code should entitle Gallas to recover based upon the application of the jury's factfindings to these sections of the Code.

The majority asserts that it is improper to discuss sections 2.401 and 2.403(b) because Gallas did not assert them on appeal. The crux of Gallas's appeal is that the trial court erred in concluding that the Certificate of Title Act controlled to the exclusion of the provisions of the Texas Uniform Commercial Code. Gallas repeatedly referenced section 2.403 in his brief. Thus, Gallas clearly raised the entirety of section 2.403 as a basis for reversal on appeal. While Gallas's arguments may have tended to focus on section 2.403(b) of the Code, the arguments were sufficiently broad to encompass any authority in the Code, including section 2.401. Gallas's failure to cite section 2.401 of the Code is more properly viewed as a failure to raise a particular piece of authority as opposed to failure to raise an argument. This approach to Gallas's position on appeal is consistent with the mandate that we liberally construe briefs in the interest of justice. *Vaughn v. Grand Prairie Indep. Sch. Dist.*, 784 S.W.2d 474, 478 (Tex.App.—Dallas 1989), *rev'd on other grounds*, 792 S.W.2d 944 (Tex.1990); *see also* Tex.R.App.P. 74(p).

I would hold Car Biz, Inc. was not entitled to judgment as a matter of law. I would sustain Gallas's points of error, reverse the trial court's judgment, and remand this case to the trial court.

### SUMMARY

"One of the declared purposes of the Code is to simplify, clarify, and modernize the law governing commercial transactions." *Associates Discount Corp. v. Rattan Chevrolet, Inc.*, 462 S.W.2d 546, 548 (Tex.1970). "It is a general body of law intended as a unified coverage of its subject matter ... [and] some transactions in motor vehicles are expressly governed thereby." *Id.* (citations omitted).

The transaction between Car Biz, Inc., Stamper, and Gallas in the present case is one of the transactions in motor vehicles which is governed by the Code. Under the express terms of the Act, the UCC is controlling in instances where the UCC and the

Texas Certificate of Title Act conflict. *See* Tex.Rev.Civ.Stat.Ann. art. 6687–1, § 65 (Vernon 1977).

Under section 2.401, title passes to the buyer when the seller completes his performance with respect to the physical delivery of the goods even though a document of title is to be delivered at a different time. *See* Tex.Bus. & Com.Code Ann. § 2.401(b) (Tex. UCC) (Vernon 1994). Under section 2.403(a), when goods have been delivered under a transaction of purchase, the purchaser has the power to transfer a good title to a good faith purchaser for value even though the delivery was in exchange for a check that is later dishonored. *See* Tex.Bus. & Com. Code § 2.403(a) (Tex. UCC) (Vernon 1994). The express language of these two UCC sections indicates the seller has the power to transfer good title to a buyer, and the seller may not reserve title when the buyer pays via a check or sight draft. Thus, the buyer that transfers all rights of the entruster under section 2.403(b) transfers good title. *See* Code § 2.403(b). If the Act provides otherwise, it must surely be in conflict with the UCC, and the UCC language controls. *See* Act § 65.

### STANDARD OF REVIEW—JUDGMENT NOTWITHSTANDING THE VERDICT

A trial court properly enters a judgment notwithstanding the verdict when (1) the evidence is conclusive and one party is entitled to judgment as a matter of law or (2) a legal principle precludes recovery. *See Mancorp., Inc. v. Culpepper*, 802 S.W.2d 226, 227–28 (Tex.1990); *John Masek Corp. v. Davis*, 848 S.W.2d 170, 173 (Tex.App.—Houston [1st Dist.] 1992, writ denied).

### APPLICABLE LAW—STATUTORY INTERPRETATION

When statutes deal with the same general subject or have the same general purpose, the statutes may be interpreted as though they were part of the same law. *Rattan Chevrolet, Inc. v. Associates Discount Corp.*, 443 S.W.2d 360, 367 (Tex.Civ.App.—Dallas 1969), *rev'd on other grounds*, 462 S.W.2d

546 (Tex.1970). The purpose of this rule of statutory interpretation is to carry out the full legislative intent by giving effect to all laws and provisions on the subject. *Id.* A court may "harmonize" apparently conflicting provisions and give full effect to each only if such an interpretation is reasonable. *Pfluger v. Colquitt,* 620 S.W.2d 739, 741 (Tex.Civ. App.—Dallas 1981, writ ref'd n.r.e.). However, where the legislature enacts a piece of legislation which provides that one statute's terms will control another statute's, then efforts to harmonize the two statutes are contrary to the legislature's express mandate. Thus, when the legislature specifies which statute is to control in the event of conflict, it is unreasonable to attempt to harmonize the conflicting provisions because to do so would be contrary to the specific intent the legislature.

## APPLICABLE LAW—CERTIFICATE OF TITLE ACT

The legislative intent behind the Certificate of Title Act is to lessen and prevent the theft of vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without the enforced disclosure to the purchaser of all liens. *See* TEX.REV.CIV.STAT.ANN. art. 6687–1, § 1 (Vernon 1977).

"In case of any conflict between this Act and the Business and Commerce Code ... the provisions of the Business and Commerce Code control." Act § 65. "No motor vehicle may be disposed of at a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title, at the time the motor vehicle is transferred ... No title to any motor vehicle shall pass or vest until the transfer is so executed." TEX.REV. CIV.STAT.ANN. art. 6687–1, § 33 (Vernon Supp.1995). "All sales made in violation of this Act shall be void and no title shall pass until the provisions of this Act have been complied with." TEX.REV.CIV.STAT.ANN. art. 6687–1, § 53 (Vernon 1977).

## APPLICABLE LAW—TEXAS BUSINESS AND COMMERCE CODE

"Unless otherwise explicitly agreed *title passes to the buyer* at the time and place at which the seller completes his performance with respect to the *physical delivery of the goods,* despite any reservation of a security interest and *even though a document of title is to be delivered at a different time."* Code § 2.401(b) (emphasis added).

"A purchaser of goods acquires all title which his transferor had." Code § 2.403(a). "A person with voidable title has power to transfer a good title to a good faith purchaser for value." *Id.* "When goods have been delivered under a transaction of purchase the purchaser has such power even though ... the delivery was in exchange for a check which is later dishonored." *Id.*

"Payment by check is conditional and is defeated as *between the parties* by dishonor of the check on due presentment." TEX.BUS. & COM.CODE ANN. § 2.511(c) (Tex. UCC) (Vernon 1994) (emphasis added). The "same result should be reached where the buyer 'pays' by sight draft." Code § 2.511 cmt. 4 (Tex. UCC) (Vernon 1968).

"Any entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business." Code §§ 2.403(b), 2.511 cmt. 4.

## APPLICATION OF LAW TO FACTS

Car Biz, Inc.'s motion for judgment notwithstanding the verdict stated Stamper "did not have title ... and could not, under the Texas Certificate of Title Act, give good title" to Gallas. Its contention was that Stamper "had given Defendant [Car Biz, Inc.] a worthless sight draft as consideration ... and therefore no title passed." The motion further stated the trial court "fell into error by charging the Jury on law which had nothing to do with the purchase and sale of motor vehicles in this State," as "the Texas Certificate of Title Act is controlling in all subsequent sales of vehicles in this State."

Gallas's response stated sections 2.401 and 2.403 of the Texas Business and Commerce Code are the "law[s] governing the sale of goods, including automobiles, between two merchants and a subsequent sale of goods by a merchant to a buyer in the ordinary course of business." Car Biz, Inc. would be entitled to judgment notwithstanding the verdict only

if the trial court determined the evidence established this issue as a matter of law, and the jury was not free to make contrary findings. *See John Masek Corp.*, 848 S.W.2d at 173. The Act, itself, states that in case of "any conflict between this Act and the Business and Commerce Code ... the provisions of the Business and Commerce Code control." Act § 65. Sections 2.401, 2.403(a), and 2.403(b) of the Code make clear that the Act does not control all subsequent sales of vehicles in Texas. Thus, Stamper could and did transfer good title to Gallas.

## 1. Section 2.403(b) of the Code

The jury found there was an entrusting of possession by Car Biz, Inc. to Stamper, and that Stamper was a merchant who dealt in the business of used automobiles. Under Code section 2.403(b), the "entrusting of possession of goods to a merchant who deals in goods of that kind gives him power to transfer *all rights of the entruster* to a buyer in the ordinary course of business." *See* Code § 2.403(b) (emphasis added).

So, the issue here is determining the entruster's rights under the UCC when the entruster has given possession to a buyer under a sales transaction. Under section 2.401, title passes to the buyer when the seller completes his performance with respect to the physical delivery of the goods even though a document of title is to be delivered at a different time. *See* Code § 2.401(b). Under section 2.403(a), when goods have been delivered under a transaction of purchase, the purchaser has the power to transfer good title to a good faith purchaser for value even though the delivery was in exchange for a check which is later dishonored. *See* Code § 2.403(a). The express language of these two UCC sections indicates that the seller has the power to transfer good title to a buyer and may not reserve title when the buyer pays via a check or sight draft. Thus, the buyer that transfers all rights of the entruster under section 2.403(b) transfers good title. If the Act provides otherwise, it must be in conflict with the UCC, and the UCC language controls. *See* Act § 65.

The majority's analysis essentially provides that although section 2.403(b) states the entrusting of possession to a merchant gives him power to transfer all rights of the entruster to a buyer in the ordinary course of business, the Certificate of Title Act eliminates the entruster's power to transfer title. *Gallas v. Car Biz, Inc.*, op. at 594 (1995, n.w.h.). This is the same analysis found in *Morey v. Page*, 802 S.W.2d 779 (Tex.App.—Dallas 1990, no writ); *Pfluger*, and *Boswell v. Connell*, 556 S.W.2d 624 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

### a. *Pfluger*

*Pfluger* is factually distinguishable from this case. In *Pfluger*, the owner Pfluger had allowed his car to be displayed by Williams, who was in the automobile business. Pfluger retained the certificate of title. There was never any attempted sale between Pfluger and Williams. When Colquitt visited Williams's business, he offered to buy the car, and Williams advised he would need Pfluger's approval. After Pfluger accepted Colquitt's offer, Williams failed to deliver the proceeds of the sale to Pfluger, and Pfluger refused to deliver the certificate of title to Colquitt. Because Williams was acting as Pfluger's agent, and "the sale of a vehicle without compliance with the Act may be effective as between the parties," the "sale by Williams as Pfluger's agent was binding on Pfluger" and Colquitt was entitled to a transfer of the certificate of title from Pfluger. *Pfluger*, 620 S.W.2d at 741–42.

Although the *Pfluger* majority opinion does discuss the relationship between the Act and section 2.403(b) of the Code, the ruling was clearly based upon a finding of a principal/agent relationship between Pfluger and Williams which precluded Pfluger from seeking protection under the Act. The Act "is intended to protect purchasers and lenders against schemes by persons without authority or ownership, rather than to permit owners to disavow the acts of authorized agents." *Pfluger*, 620 S.W.2d at 742 (citing *Texas State Bank v. Foremost Ins. Co.*, 477 S.W.2d 652, 655 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.)).

Further, the Act and section 2.403(b) of the Code do conflict, and the Code should then govern under the express provision of section 65 of the Act, as discussed in Justice Stephens's concurrence in *Pfluger*. *Pfluger*, 620 S.W.2d at 744 (Stephens, J., concurring). Section 2.403(b) of the Code provides "limited protection to a purchaser in that exceptional circumstance where the sale of a motor vehicle by a merchant ... in possession is made to a buyer in the ordinary course of business, provided the merchant is a dealer in motor vehicles." *Pfluger*, 620 S.W.2d at 744 (Stephens, J., concurring); *see* Code § 2.403(b). Thus, a "middle-man" dealer whose sight draft is not honored would still have voidable title and would be empowered to transfer good title to a good faith purchaser for value. *See Pfluger*, 620 S.W.2d at 746 (Stephens, J., concurring).

### b. *Boswell*

I agree with the majority that the facts of *Boswell* are nearly identical to the facts of the present case. *Boswell*, 556 S.W.2d at 625–26. The *Boswell* opinion is based on the grounds that *Apeco Corp. v. Bishop Mobile Homes, Inc.*, 506 S.W.2d 711 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.), "had established the rule that 'first' sales of motor vehicles were governed by the Code, but that the Act was the sole governing law with respect to subsequent sales."[1] *Pfluger*, 620 S.W.2d at 746 (Stephens, J., concurring) (discussing language found in *Boswell*, 556 S.W.2d at 626). Since the clear language of section 65 of the Act mandates that the Code shall govern in the event of a conflict between the Act and the Code, the majority's reliance on *Boswell* is misplaced. *See* Act § 65; *see also Pfluger*, 620 S.W.2d at 746 (Stephens, J., concurring).

Justice Stephens's concurring opinion in *Pfluger* also addressed *Boswell*'s fiction concerning whether the Code and the Act were in conflict:

Had the Certificate of Title Act not been in force at the time of the *Boswell* transaction, it is clear that title to the goods would have passed to Connell under the provisions of the Code. On the other hand, had the Business and Commerce Code not been in effect, it is equally clear that title would not have passed to Connell under the Certificate of Title Act. Thus, I conclude that if the same factual transaction can harvest different results under different statutes, the statutes are in conflict.

*Pfluger*, 620 S.W.2d at 747 (Stephens, J., concurring).

### c. *Morey*

The facts in *Morey* are also nearly identical to the facts of the present case. *Morey*, 802 S.W.2d at 782–83. Page had entrusted a Rolls Royce to Yardley on consignment. Morey bought the vehicle from Yardley, but Yardley failed to deliver the proceeds to Page. This Court then characterized *Pfluger* to hold "that if the owner of a vehicle has no power to dispose of the vehicle without a proper transfer of the certificate of title [as required by the Act], then no merchant to whom the vehicle is entrusted [under section 2.403(b) of the Code] has the power to dispose of the vehicle without a proper transfer of the certificate." *Morey*, 802 S.W.2d at 784 (citing *Pfluger*, 620 S.W.2d at 741).

Further, *Morey*'s reliance upon *Pfluger* is misplaced. Although *Pfluger* does discuss the relationship between 2.403(b) of the Code and the Act, the *Pfluger* opinion was based upon the fact that the Act would not operate to void a sale as to the immediate parties to the sale, and the entruster/principal *Pfluger* had entrusted the vehicle to his agent Williams, who then sold the vehicle to Colquitt. *Pfluger*, 620 S.W.2d at 741–42. *Morey* then found there was no evidence of an agency relationship between Page and Yardley, so the transaction fell under the requirements of the Act. *Morey*, 802 S.W.2d at 785.

---

1. In *Apeco*, a manufacturer sold a mobile home to its dealer, Bishop, under a manufacturer's certificate of title, not a certificate of title. Bishop then sold the mobile home to Mohr. Because the sale of the mobile home prior to its registration under the Certificate of Title Act was a "first sale," rather than a "subsequent sale," the Certificate of Title Act did not apply. Once a vehicle is registered for the first time and a certificate of title is issued, subsequent sales must then comply with the Act. *See Apeco*, 506 S.W.2d at 715–16.

It is clear the analyses contained in these three opinions do not control the outcome of the present case. The trial court erred in granting Car Biz, Inc.'s motion for judgment notwithstanding the verdict because section 2.403(b) controlled the case—not the provisions of the Act. Additionally, the trial court's judgment was erroneous in view of other provisions of the Code which are discussed below.

## 2. Section 2.401 of the Code

Car Biz, Inc.'s motion for judgment notwithstanding the verdict and the majority opinion ignore section 2.401 of the Code. Under the express language of section 2.401, *title passes to the buyer* when the seller completes his performance with respect to the physical delivery of the goods *even though a document of title is to be delivered at a different time.* Code § 2.401(b). When a seller has voluntarily surrendered possession to the buyer, the Code limits a seller's reservation of title to a reservation of a security interest. Code § 2.401(b); *see Peerless Equip. Co. v. Azle State Bank,* 559 S.W.2d 114, 115 (Tex.Civ.App.—Fort Worth 1977, no writ). To the extent the Act provides otherwise, it must be disregarded in favor of the Code.

The jury found that merchant Stamper purchased the vehicle from merchant Car Biz, Inc., and that Gallas was a buyer in the ordinary course of business when he bought the vehicle from Stamper. Thus, when Car Biz, Inc., a merchant, delivered the vehicle to Stamper, a merchant, title passed to Stamper under section 2.401. Similarly, when Stamper delivered the vehicle to Gallas, title passed to Gallas under section 2.401.

In the present case, I would reject any attempt to "harmonize" section 2.401 of the Code and the Act in the same way the majority has "harmonized" section 2.403(b) of the Code and the Act. A statutory interpretation which attempts to harmonize these provisions necessarily admits there is a conflict between them. *See Pfluger,* 620 S.W.2d at 741. The legislature, through section 65 of the Act, has instructed in the event the provisions of the Code and the Act conflict, the Code is to control. Thus, an effort to "har-

monize" the provisions of the Code and the Act is erroneous.

The express language of section 2.401 provides that title passes to the buyer when the seller delivers the goods. Unlike section 2.403(b), there is no discussion of the "rights of the seller" as being the basis for transfer of title in section 2.401, thus the Act cannot be introduced to hold that the seller lacked the power to transfer title.

The Act states the UCC is controlling in instances where the UCC and the Texas Certificate of Title Act conflict. The express language of section 2.401 would entitle Gallas to recover based upon the application of the jury's factfindings to section 2.401. I would hold Car Biz, Inc. was not entitled to judgment as a matter of law, and should not have received judgment notwithstanding the verdict.

## 3. Section 2.403(a) of the Code

Car Biz, Inc.'s motion for judgment notwithstanding the verdict and the majority opinion also ignore section 2.403(a) of the Code. When goods have been delivered under a transaction of purchase, a person with voidable title has power to transfer a good title to a good faith purchaser for value, even though the delivery was in exchange for a check which is later dishonored. Code § 2.403(a).

The jury found Stamper was a purchaser of the vehicle from Car Biz, Inc., and that the vehicle was delivered to merchant Stamper by merchant Car Biz, Inc. under a "transaction of purchase." The jury also found Gallas was a buyer in the ordinary course of business. Thus, in the present case, applying the express language of section 2.403(a), the goods were delivered to merchant Stamper under a transaction of purchase, so Stamper would have had the power to transfer good title to Gallas, a buyer in the ordinary course of business.

When Stamper's sight draft was dishonored, it did not permit Car Biz, Inc. to defeat the title of Gallas. Car Biz, Inc. can only defeat the title of Stamper. *See* Code § 2.403(a); Tex.Bus. & Com.Code Ann. § 2.511(c) (Tex. UCC) (Vernon 1994).

The Beaumont court addressed a fact situation similar to the present case in *Leif Johnson Ford, Inc. v. Chase National Bank,* 578 S.W.2d 792 (Tex.Civ.App.—Beaumont 1978, no writ). Leif sold two trucks to Big T. Big T took possession of the trucks, but Big T's check to Leif was subsequently dishonored. Big T obtained certificates of title which did not reflect any liens. Big T then took the certificates of title to Chase and used them as collateral for a loan. Leif repossessed the trucks, and Chase filed suit.

The Beaumont court held that Big T had the power to transfer title to the vehicles to a good faith purchaser under section 2.403(a). *Leif Johnson Ford, Inc.,* 578 S.W.2d at 794. Payment by check or sight draft is conditional, and the dishonor of the check or sight draft defeats the payment only between the parties. Code §§ 2.511(c), § 2.511 cmt. 4; *see Leif Johnson Ford, Inc.,* 578 S.W.2d at 794. Chase was a "good faith purchaser" under section 1.201, which defines a purchaser as including a person taking by "mortgage, pledge, lien, or any voluntary transaction creating an interest in property." TEX. BUS. & COM.CODE ANN. § 1.201 (32, 33) (Tex. UCC) (Vernon 1994); *see Leif Johnson Ford, Inc.,* 578 S.W.2d at 794. As a "good faith purchaser," Chase therefore took a lien on the trucks when it loaned Big T the money, and this lien was superior to Leif's claim. *Leif Johnson Ford, Inc.,* 578 S.W.2d at 794. Thus, a seller unpaid by virtue of a dishonored check cannot defeat the title of a good-faith third-person purchaser from the buyer.

Section 2.403(a) "anticipates a situation where (1) a cash seller has delivered goods to a buyer who has paid by check which is subsequently dishonored ... and where (2) the defaulting buyer transfers title to a Code-defined 'good faith purchaser.'" *Leif Johnson Ford, Inc.,* 578 S.W.2d at 794 (citation omitted). "Section 2.403(a) gives good faith purchasers of even fraudulent buyers-transferors greater rights than the defrauded seller can assert." *Id.* Applying the same reasoning to the present case, the claim of the good faith purchaser, Gallas, is superior to the claim of the initial owner, Car Biz, Inc.

Finally, as previously discussed in section 2.401, I would also reject any attempt to "harmonize" section 2.403(a) of the Code and the Act in the same manner the majority has "harmonized" section 2.403(b) of the Code and the Act. The express language of section 2.403(a) provides that a person with voidable title has power to transfer good title to a good faith purchaser for value, even though the delivery was in exchange for a check which is later dishonored. Unlike section 2.403(b), there is no discussion of the "rights of the seller" as being the basis for transfer of title in section 2.403(a), thus the Act cannot be introduced to hold the seller lacked the power to transfer title. Since section 2.403(a) states the initial buyer has the power to transfer good title to a good faith purchaser, the minimization of this power would be in direct conflict with the express language of section 2.403(a).

Because the UCC is controlling in instances where the UCC and the Texas Certificate of Title Act conflict, and the express language of section 2.403(a) of the UCC would entitle Gallas to recover based upon the application of the jury's factfindings to section 2.403(a), I would hold Car Biz, Inc. was not entitled to judgment as a matter of law and should not have received judgment notwithstanding the verdict.

## CONCLUSION

As discussed above, it is my opinion that the Act and the Code are in conflict. If an interpretation of the Act utilizing the facts of the present case provides a different result, then the Act and the Code are "in conflict," and the Code controls the outcome of the case. *See* TEX.REV.CIV.STAT.ANN. art. 6687–1, § 65 (Vernon 1977).

Applying the facts found by the jury in the present case to the express language of sections 2.401, 2.403(a), and 2.403(b) of the Code, Car Biz, Inc. was not entitled to judgment as a matter of law. Therefore, Car Biz, Inc. was not entitled to judgment notwithstanding the verdict. I would reverse the trial court's judgment and remand for further proceedings.