Opinion Issued January 13, 2005



















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-01356-CV
____________
 
FINANCIAL SERVICES, INC., D/B/A CHAMPION AUTO AUCTION,
Appellant
 
V.
 
REPUBLIC NATIONAL BANK, Appellee
 

 
 
On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2003-49845
 



MEMORANDUM OPINION
          Appellant, Financial Services, Inc., d/b/a Champion Auto Auction (Champion),
challenges both the trial court’s rendition of summary judgment in favor of appellee,
Republic National Bank (Republic), and the trial court’s denial of its own summary
judgment motion. In a single issue, Champion contends that the trial court erred in
granting Republic’s summary judgment motion and erred in denying its summary
judgment motion.
          We affirm.
Factual and Procedural Background
          Champion, in its declaratory judgment action, alleged that it is a “motor vehicle
auction company.” It agreed to sell nine cars from two used-car dealers to Global
Sales, Inc. (Global), a third dealer. After the sale to Global, Champion paid Global’s
costs for the cars pursuant to a separate agreement that it had with Global. Champion
retained the certificates of title to the cars, pending repayment of the money that
Champion had advanced on behalf of Global. Global took possession of each car,
and its name appears as the purchaser on the certificates of title, but it failed to repay
Champion. Meanwhile, Republic, pursuant to a floor-plan financing arrangement,
had perfected a security interest in each of the cars as inventory of Global and on the
proceeds of their sales. After Global declared bankruptcy, it sold the cars pursuant
to an agreed order in its Chapter 11 case, and the proceeds are being held in a separate
account at Republic. Champion sought a declaration that it is entitled to the proceeds
and sought recovery of its reasonable and necessary attorney’s fees. Champion
asserted its entitlement to the proceeds on the grounds that it retained possession of
the certificates of title in the nine cars, albeit that the titles name Global as the
purchaser. 
          In its answer, Republic asserted a general denial and counterclaim, also seeking
a declaration that it, not Global, is entitled to the sales proceeds, as well as recovery
of its reasonable and necessary attorney’s fees. Republic asserted its entitlement to
the proceeds from the sale on the grounds that it has the first-filed security interest in
the cars and the proceeds from their sale. Thereafter, Champion and Republic filed
cross-motions for summary judgment based on a set of stipulated facts. The trial
court granted Republic’s motion and denied Champion’s motion. 
          In support of their respective summary judgment motions, the parties stipulated
to the following facts: (1) Republic has a first perfected security interest in Global’s
inventory and its proceeds as security for loans that Global owes to Republic;
(2) Since February 1, 2002, Global has continued to owe Republic in excess of
$350,000 on loans secured by Global’s inventory and its proceeds; (3) Global is a
non-franchised motor vehicle dealer licensed in 2002 by the Texas Department of
Transportation, and it filed a Chapter 11 bankruptcy in August 2002, which was later
converted to a Chapter 7 bankruptcy; (4) Champion is “a motor vehicle auction
company licensed by the Texas Department of Transportation to conduct motor
vehicle auto auctions”; (5) During June and July 2002, Global agreed to buy nine cars
at Champion’s auto auction; (6) The nine cars were subject to a June 7, 2002
agreement between Global and Champion, attached as summary judgment evidence,
and “[p]aragraph 1 of the Agreement was performed as to each of the [n]ine
[v]ehicles”; (7) Each car transaction was evidenced by an auction sheet, copies of
which were attached as summary judgment evidence, and Champion paid the “Seller”
[a car dealer] identified in each auction sheet the amount shown therein as the
“Selling Price”; (8) A copy of Champion’s Policies/Procedures was attached as
summary judgment evidence; (9) After Global agreed to acquire the nine cars,
Champion permitted Global to possess the cars and place them “on Global’s lot for
prospective sale to retail customers”; (10) Although Champion retained possession
of the original certificates of title to the nine cars, pursuant to the terms of the June
7, 2002 agreement,


 Global never repaid Champion the amounts owed on the nine
cars, except for a 2000 Chevrolet Camaro, and Champion never delivered the original
certificates of title to the nine cars to Global, except for the title to the Camaro;
(11) Champion recovered possession of the nine cars, except for the 2000 Chevrolet
Camaro, and sold them at auction, with the net proceeds being deposited into an
escrow account at Republic, together with the proceeds from the Camaro, pursuant
to the agreed order (There is presently a balance of $71,745.00 in the escrow account,
which Republic and Champion both claim); and (12) Champion and Republic agree
that the prevailing party shall be entitled to recover its reasonable attorney’s fees, not
to exceed $5,000.00, incurred in connection with this dispute. 
Standard of Review
             To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. See Tex. R. Civ. P. 166a(c); Black v. Victoria Lloyds Ins. Co., 797
S.W.2d 20, 23 (Tex. 1990); Farah v. Mafrige & Kormanik, P.C., 927 S.W.2d 663,
670 (Tex. App.—Houston [1st Dist.] 1996, no writ). When both parties move for
summary judgment, we review the summary judgment evidence presented by both
sides. Comm’rs Ct. of Titus County. v. Agan, 940 S.W.2d 77, 81 (Tex. 1997); Cigna
Ins. Co. v. Rubalcada, 960 S.W.2d 408, 411-12 (Tex. App.—Houston [1st Dist.]
1998, no pet.). When the trial court grants one party’s motion and denies the other’s,
the non-prevailing party can appeal both the summary judgment rendered against it
and the denial of its own motion. Holmes v. Morales, 924 S.W.2d 920, 922 (Tex.
1996). When a summary judgment does not specify the grounds on which the trial
court granted it, the reviewing court will affirm the judgment if any theory included
in the motion is meritorious. Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989);
Summers v. Fort Crockett Hotel, Ltd., 902 S.W.2d 20, 25 (Tex. App.—Houston [1st
Dist.] 1995, writ denied). 
Analysis
          Citing Texas Transportation Code sections 501.071(a)


 and 501.073,



Champion argues that it did not make a valid “sale” of the nine cars to Global
because, (1) in order for there to be a valid sale, “there simply must be a transfer and
delivery of title to the [v]ehicles”; (2) “[f]or purposes of deciding this case,
[Republic] as mortgagee is the same or equivalent to a purchaser since [s]ection
1.201(b)(29)


 of the Texas Business and Commerce Code defines ‘purchase’ as
‘. . . taking by sale . . . mortgage, pledge, lien, [or] security interest . . .’”; and
(3) “[u]nless Global (or the Bank) received certificates of title to the [v]ehicles, there
could be no valid sale and thus, the Bank had no rights in the [v]ehicle pursuant to its
security interest.”
          Section 501.071 provides that a motor vehicle may not be the subject of a
subsequent sale unless the owner designated in the certificate of title transfers the
certificate of title at the time of the sale. Tex. Transp. Code Ann. § 501.071(a)
(Vernon 1999). Furthermore, a sale made in violation of the Transportation Code is
void, and title does not pass until the requirements of the Code are satisfied. Id.
§ 501.073 (Vernon 1999). It is only the “owner” of a motor vehicle that is required
to secure a certificate of title before selling it, and the term “owner” expressly
excludes manufacturers, importers, distributors, or dealers. Id. § 501.002(16)
(Vernon Supp. 2004-2005).


 Furthermore, a “subsequent sale” is partly defined as
“the bargain, sale, transfer, or delivery of a motor vehicle that has been previously
registered or licensed in this state or elsewhere, with intent to pass an interest in the
vehicle, other than a lien, regardless of where the bargain, sale, transfer, or delivery
occurs.” Id. § 501.002(20) (Vernon Supp. 2004-2005) (emphasis added). A “lien”
expressly includes a security interest in a motor vehicle. Id. § 501.002(9)(B) (Vernon
Supp. 2004-2005).
          Here, section 501.071 is inapplicable. The summary judgment evidence shows
that Global is not an “owner” as defined by the Transportation Code. The stipulated
facts filed by both Champion and Republic as summary judgment evidence state that
Global is a “non-franchised motor vehicle dealer.” The summary judgment evidence
also shows that Global did not make a “subsequent sale,” as defined in the
Transportation Code, to Republic. Rather, Republic claims a security interest in the
proceeds from the nine vehicles sold by Champion, which constitutes a lien. A lien,
as noted above, is excluded from the definition of “subsequent sale.” Id.
§§ 501.002(9)(B), (20). Moreover, the summary judgment evidence shows that
Champion is not an “owner” because its name does not appear on the certificates of
title and because it does not meet the definition of an “owner,” as defined by the
Transportation Code.
          In support of the proposition that a party who retains possession of a certificate
of title should prevail over a perfected security interest because, without the title, a
“sale” never occurs, Champion relies primarily on Arcadia Financial, Ltd. v.
Southwest-Tex Leasing Co., Inc., 78 S.W.3d 619 (Tex. App.—Austin 2002, pet.
denied); Bank One Texas N.A. v. Arcadia Financial, Ltd., 219 F.3d 494 (5th Cir.
2000); and Gallas v. Car Biz, Inc., 914 S.W.2d 592 (Tex. App.—Dallas 1995, writ
denied). However, each of the cases is substantively distinguishable from the instant
case.
          In Southwest-Tex Leasing, Advantage had agreed to sell cars to Lone Star, but
Advantage retained the certificates of title until Lone Star paid for the cars. 78
S.W.3d at 621. Lone Star also had an agreement with Arcadia for Arcadia to finance
retail installment contracts to Lone Star’s customers, provided that Lone Star assign
the contracts to Arcadia. Id. The agreement required Lone Star to transfer the
certificates of title to Arcadia after a purchase by a customer. Id. Lone Star sold four
of the cars it had acquired from Advantage to customers, but Lone Star failed to pay
Advantage for the cars. Id. Consequently, Advantage never transferred the
certificates of title to Arcadia. Id. However, Lone Star and its customers had
executed retail installment contracts, and Lone Star had assigned the contracts to
Arcadia without the certificates of title. Id. After Lone Star went out of business and
refused to buy back the cars from Arcadia, Arcadia demanded that Advantage
relinquish the certificates of title. Id. at 621-22. Advantage refused, and Arcadia
sued. Id. at 622. The court held that Lone Star had not yet acquired ownership of the
cars because it had not paid Advantage for them, and, because Lone Star never
acquired ownership, it could not transfer a security interest in the cars to Arcadia. Id.
at 624-25. The court expressly based its holding on the stipulation between Lone
Star and Advantage that the sale of any car to Lone Star was contingent upon
Advantage’s receipt of full payment from Lone Star. Id. at 624. 
          Here, no stipulation exists between Champion and Global as to what constituted
a “sale.” Rather, the summary judgment evidence shows that each of the nine car
transactions was evidenced by an auction sheet. The reverse side of each auction sheet
specifies that title and ownership of the cars passed from the “seller” to the “buyer”
when the draft given for the sales prices had been paid in full. The “seller” is
identified as either Economy Car Broker or Auto Concepts, and the “buyer” is
identified as “Globe Auto Sales.” The summary judgment evidence also shows that
Champion paid the draft for each car’s sales price to each “[s]eller.” Furthermore, the
June 7, 2002 agreement between Champion and Global provides only that Champion
would retain possession of the certificates of title of the nine cars until Global repaid
Champion the “[r]epayment [a]mount,” plus any unpaid draft fees. Thus, ownership
of the nine cars transferred to Global when Champion paid the two other dealers on
Global’s behalf.
          In Bank One, Bank One had a perfected security interest in Lone Star’s
inventory to secure a line of credit for inventory or “floor plan” financing, and, under
its arrangement with Lone Star, it retained physical possession of all the cars in Lone
Star’s inventory until Lone Star forwarded money to Bank One following a purchase
by a consumer. 219 F.3d at 498. Lone Star purported to sell nine used cars to
consumers without informing Bank One. Id. The buyers were given possession of the
cars and entered into loan agreements with Arcadia. Id. The court held that Bank
One’s perfected security interest in Lone Star’s inventory was not interrupted when
a purported buyer attempted to purchase a car without receiving title. Id. at 499.
However, contrary to Champion’s assertion, the determinative aspect of Bank
One was not that Bank One had physical possession of the certificates of title. Rather,
the key factor was that Lone Star purported to sell cars to consumers without also
transferring the certificates of title to the consumers. Under section 501.071(a), no
legal sale could be made to the consumers without transfer of the titles, so the
consumers could not be considered “buyers in the ordinary course of business” as
required to interrupt Bank One’s security interest. See id. Here, Global did not “sell”
the cars to Republic, and, therefore, Global was not required to transfer the certificates
of title to Republic. Additionally, unlike in Bank One, here, the summary judgment
evidence does not establish that Champion ever perfected a security interest in the nine
cars that Global purchased from dealers at Champion’s auction. 
          In Gallas, Car Biz, a dealer, sold two cars to Stamper, another dealer, and
allowed Stamper to take possession of the cars. However, Stamper failed to pay Car
Biz, so Car Biz did not relinquish possession of the certificates of title. Stamper then
sold a car to Gallas, a non-dealer, who, in return, paid Stamper. However, Gallas did
not receive a certificate of title because it was still in Car Biz’s possession. Gallas
sued Car Biz, seeking a declaration that he was the owner and specific performance
for title transfer. The court held that, because Stamper did not have the title to transfer
to Gallas, the subsequent sale from Stamper to Gallas was void as to Car Biz and did
not pass title. 
          However, Gallas is not applicable because the instant case does not involve a
dealer making a subsequent sale to a non-dealer without also transferring the
certificate of title. Rather, this case involves Global, a car dealer that purchased cars
at Champion’s car auction from two other car dealers, and Republic, a secured party
attempting to have its perfected security interest in Global’s inventory attach to the
nine cars.
          Champion also asserts that Republic “could obviously have protected itself by
extending credit to Global only when Global delivered certificates of title” because
“[s]ection 501.111 of the Transportation Code provides that perfection of a security
interest requires notation on the title of each vehicle.”
          Section 501.111(b) provides that a “person may perfect a security interest in a
motor vehicle held as inventory by a person in the business of selling motor vehicles
only by complying with Chapter 9, Business & Commerce Code.” Tex. Transp.
Code Ann. § 501.111(b) (Vernon 1999). A security interest is perfected when it has
attached and when all the applicable steps required for perfection have been taken. 
Tex. Bus. & Comm. Code Ann. § 9.308(a) (Vernon 2002). Generally, a security
interest attaches when (1) the debtor authenticates a security agreement containing a
description of the collateral; (2) the secured party gives value for a security interest;
and (3) the debtor obtains rights in the collateral or the power to transfer rights in the
collateral to a secured party. Id. § 9.203(b) (Vernon 2002). The official comments to
section 9.203(b) provide that a debtor’s limited rights in collateral, short of full
ownership, are sufficient for a security interest to attach. The attachment of a security
interest in collateral gives the secured party the rights to proceeds. Id. § 9.203(f) 
(Vernon 2002). 
          Generally, a financing statement must be filed to perfect a security interest in
inventory. Id. § 9.310(a) (Vernon 2002). Under section 9.311(d), perfection of a
security interest in the inventory of a person in the business of selling goods of that
kind is governed by the normal perfection rules, even if the inventory is subject to a
certificate-of-title-statute. Id. § 9.311(d) (Vernon Supp. 2004-2005). Compliance
with a certificate-of-title statute is both unnecessary and ineffective to perfect a
security interest in inventory to which § 9.311(d) applies. See id. Thus, a secured
party who finances an automobile dealer that is in the business of selling and leasing
its inventory of automobiles can perfect a security interest in all the automobiles by
filing a financing statement with the Secretary of State but not by compliance with a
certificate-of-title statute. Id. § 9.310(a), § 9.311(d); see Tex. Transp. Code Ann. §
501.111(b). 
             The summary judgment evidence shows that Republic’s security interest in
Global’s inventory included the nine cars that Global purchased at Champion’s
auction. Specifically, Republic’s security interest in Global’s inventory attached to
the nine cars because Global had “rights in the collateral.” See id. § 9.203(b). Global
had “rights in the collateral” because the summary judgment evidence shows that
ownership of the nine cars had been transferred to Global when it purchased the cars
at Champion’s auction. Particularly, the summary judgment evidence included the
auction sheets that documented the sale of the nine cars to Global. In the first
paragraph under “Terms & Conditions of Sale” on the reverse side of each auction
sheet, the following provision concerning the transfer of title and ownership of each
car exists:
The buyer agrees . . . that the title and ownership of said vehicle above
mentioned, with all its equipment, radio, heater, etc. shall remain in the
seller until any check or draft given for the Sale Price of said vehicle or
any part of the same, has been honored and paid in full, and until said
check or draft shall have been honored and paid in full, title to the above
described vehicle shall be retained by the seller and not pass to the buyer,
nor shall this sale be considered consummated.
 
The “seller” in each auction sheet is identified as either “Economy Car Brokers” or
“Auto Concepts.” The “purchaser/buyer” is identified as “Globe Auto Sales.” 
Champion is identified as the “auction company.” The bottom of the front page of
each auction sheet states that the “sale is solely a transaction between the buying and
selling dealers.” And, on the back side of each auction sheet, paragraph ten provides
that “[i]n permitting buyers and sellers to use its sales facilities the auction company
acts only in the capacity of broker and not as agent for either buyer or seller.” 
Moreover, as part of their summary judgment evidence, Champion and Republic
stipulated to the facts that “Paragraph 1 of the [June 7, 2002] Agreement was
performed as to each of the [n]ine [v]ehicles.” The first paragraph in the June 7, 2002
agreement between Champion and Global provides: 
Champion will pay for Dealer’s [Global’s] drafts for vehicles purchased
by Dealer at Champion’s auction. However, when a draft is submitted
for payment, Champion may in its discretion elect not to pay a particular
draft and if so Champion will promptly inform Dealer of its decision. In
any event in order to qualify for payment, Dealer represents that it has
examined the title and the condition of each vehicle purchased and is
satisfied with the same. 
 
          Furthermore, the summary judgment evidence shows that “Champion paid the
‘Seller’ identified in each auction sheet the amount shown therein as the ‘Selling
Price.’” The evidence establishes that Champion paid the two dealers from whom
Global purchased the nine cars and that ownership of the cars transferred to Global. 
Thus, Republic’s security interest in Global’s inventory attached to the nine cars
when Global purchased the cars at Champion’s auction from the two dealers because
Global had obtained “rights in the collateral” sufficient for Republic’s security
interest to attach. 
          The summary judgment evidence also shows that Republic has a first perfected
security interest in Global’s inventory and its proceeds, which includes the proceeds
from the nine cars. Because the summary judgment evidence shows that the nine
cars became a part of Global’s inventory, Republic’s security interest in the nine cars
was perfected. Therefore, we hold that the trial court did not err in granting
Republic’s summary judgment motion and in denying Champion’s summary
judgment motion.
Conclusion
          We affirm the judgment of the trial court. 
 
 
                                                                        Terry Jennings
                                                                        Justice
 
 
Panel consists of Justices Taft, Jennings, and Bland.